MINERALLAC ELECTRIC CO. v. CLEVELAND ELECTRIC ILLUMINATING CO. et al.

(District Court, N. D. Ohio, E. D. January 15, 1913.)

No. 8,247.

PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ELECTRIC METER.

The Merz patent, No. 722,030, for a combined electric measuring and indicating apparatus, was not anticipated, discloses patentable invention, and is entitled to a broad construction of its claims; also *held* infringed.

In Equity. Suit by the Minerallac Electric Company against the Cleveland Electric Illuminating Company and Mathias E. Turner. On final hearing. Decree for complainant.

Brown & Williams, of Chicago, Ill., for complainant.
Hull & Smith, of Cleveland, Ohio (Hubert Howson, of New York City, of counsel), for defendants.

DAY, District Judge: This is a suit for alleged infringement of the first four claims of patent No. 722,030 to Merz, assigned by the pat-

entee to the complainant. A consideration of the record involves an inquiry into the validity of these four claims of the Merz patent; as it appears plainly that, if these claims are valid, the defendants' device is an infringement.

The patent in suit is designed to provide for an instrument, or meter, which will not only integrate and register the entire amount of current or energy used by a consumer of electricity, during the entire period charged for, as one month, but which will integrate and register the maximum amount of current or energy consumed in a definite, shorter interval of time, which should be one of a certain number of equal intervals of time into which the long or charged-for interval is divided.

In the development of the electrical art, it became apparent to central station engineers that all customers using the same amount of electricity were not equally desirable. Of two customers using the same number of kilowatt-hours per day, one might desire a continual, regular flow of current; the other might at intervals desire a very small amount of current, and again desire, for a short time, a very large amount of current, as in the case of a church lighted once or twice a week to its full lighting capacity. To take care of this maximum demand for current requires additional central station equipment, or, in other words, it calls for additional expense in the generation of the current desired. Accordingly, to thoroughly establish a basis of charging, the two elements of amount of electrical energy used and how used became important, depending upon the total number of kilowatt-hours supplied, and also upon the greatest demand which the customer makes upon the central station capacity, so far as his particular needs are concerned.

Inventors, realizing the need of measuring devices for electrical flow, which would perform the functions I have referred to, first devised indicators which would give an instantaneous record of the maximum flow demanded, as shown in patent No. 607,185 to Marks, patent No. 624,993 to Swoboda, 661,881 to Little, and 671,272 to Fish. These devices were unsatisfactory. By their use, in case of an accidental short circuit, the resulting heavy rush of current would be recorded and shown at a high figure. It then became apparent in the art that the recording instruments should be so designed as to be so sluggish in their response to the electrical forces upon which their operation depended as to ignore momentary rushes of current, and only record high rates of flow, continued for appreciable periods of time.

Prominent among these devices was patent No. 583,160 to Wright, based upon a thermometer-like contrivance by which the flow of electricity by heating coiled wire caused the liquid in this thermometer-like instrument to rise, and by being graded on a scale would indicate the maximum of electrical flow; also the Halsey patent, No. 642,424, designed to measure the flow of current by split spindles, one part pivoted within another, and the intervening portion between the spindle parts filled with a very viscous material, permitting the end of the spindle, geared so as to indicate the flow, to turn quite slowly.

These sluggish indicators, or meters, did not reliably measure the

flow of current for definite times—the Wright device, which seems to have been most extensively used, failing to register the maximum demand accurately, unless the demand lasted for a considerable period of time; and the Halsey device, by reason of its structure, failing to be a practical meter for the purpose for which designed.

Merz was then confronted with the problem to provide a meter which should not only integrate and register the entire amount of current or energy used by a consumer during the time charged for, but should also integrate and register the maximum amount of current or energy consumed in a definite shorter interval of time.

The Merz structure involves essentially: First, a quantity meter of some kind. It is an instrument measuring, not the rate at which electricity or energy is supplied, but the quantity of electricity or power which is supplied during a long period. Second, instead of associating with such an instrument a rate-measuring device, as was universally done in the prior structures, Merz provides means of indicating the record which the meter has made of the quantity of current or power delivered during some definite period of time significant with respect to the generating capacity of the station. He also provides means under a controllable clock for setting back this maximum demand integrator at the end of each significant period. To complete the apparatus, he provides a nonreturn indicating hand and dial, which retains the position in which it is placed by the maximum integration for any maximum demand period.

The Merz structure not only indicates a different quantity, but indicates it in a different way, than any of the other mechanisms in the prior art. This invention connects the maximum demand indicator to the integrating train or registering mechanism of a quantity measuring device, thus indicating a summation of all that has happened during an interval long enough to have a significant relation to the ability of the central station plant to supply current.

The introductory clause of claim 1 of the patent sets forth:

"Combined electric measuring and indicating apparatus capable of integrating the amounts of electricity that shall have passed through the apparatus during a number of equal intervals of time, and of indicating the greatest of these amounts."

Without quoting the entire claim, the claim goes on to describe the features of the device, and says:

"Said apparatus, comprising an integrating meter, a body adapted to be actuated during each interval of time to an extent dependent upon the total quantity of electricity that shall have passed through said apparatus during the interval, an indicator adapted to be moved in one direction by said body and to remain in the position into which it is moved, and means for returning said body to its original position at the end of each interval of time."

The second claim provides in part for:

"Apparatus for measuring and indicating an electrical supply; an integrating electricity meter, and an indicating device driven from said meter, and adapted to indicate the greatest amount of current integrated by said meter during any one of a number of intervals of time."

The third claim is in part similar to the second, and provides in part:

"A body arranged to be actuated from said meter to an extent dependent upon the quantity of electricity passing through the meter, an indicator adapted to be moved in one direction by said body and to remain in the position in which it is left, and means for restoring said body to its starting position at regular intervals of time."

The introductory clause of the fourth claim is like that of the third. The claim then sets forth:

"Gearing co-operating with said meter, an actuating device arranged to be moved in one direction by said gearing, an indicator arranged to be moved in one direction by said actuating device, and to remain in the position in which it is left, and means for setting back said actuating device at regular intervals of time."

By referring to the claims made for the defendants' structure, it is quite apparent that both the defendants' structure and the complainant's structure are alike in their mode of operation and their result.

Among the patents indicating the state of the prior art, cited by the defendants, was a patent of Petri, issued in 1880; patent to Little, No. 661,881; patent to Robinson & Badeau, No. 919,640. For the purposes of this memorandum, it is not necessary to discuss these patents at length. The significant intervals of time and the maximum indications characteristic of the Merz patent do not appear in the Petri patent. The Petri device was designed to count the number of revolutions of a shaft or machine, and did not comprehend an application or use such as is involved in the Merz patent. The Little patent does not show the maximum demand for a significant interval of time, but only registers instantaneous electrical impulses. The maximum demand for energy is never accurately indicated by the Little structure. The Robinson & Badeau structure was designed to show a curve drawing of fluctuations of the electrical flow, and would require mathematical computation, in order to arrive at the maximum amount of current used.

The complainant asks for a broad construction of the claims of the Merz patent, and from the view which I take of these claims I think that such construction should be given to them. It appears to me that Merz was the first to combine with a current-integrating meter an arrangement for integrating for shorter intervals the current or energy. And he was the pioneer in the conception of the realization of an invention which consists of the use of an integrating watt meter or current meter for the charged-for meter, together with the application thereto of an arrangement for integrating short or equal intervals of time as to current flow in the circuit—the further indication of the maximum of the integrations for the short time periods.

The invention may appear simple to a skilled electrical engineer, but it appears to me to have involved a comprehension of the problem of measuring electricity, combined with a practical arrangement of machinery in such a way as to plainly and accurately indicate the maximum amount of electric current used in a period as well as the current flow during an appreciable period.

An order may accordingly be entered to comply with the prayer of the complainant's bill. Exceptions may be granted to the defendants.